UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-23917-CIV-MARTINEZ/SANCHEZ

ACCELERANT SPECIALTY INSURANCE
COMPANY and TEXAS INSURANCE
COMPANY,

    Plaintiffs,

v.

SANTANA MANAGEMENT, LLC,

    Defendant.
_____/

**REPORT AND RECOMMENDATION ON PLAINTIFFS'
MOTION FOR FINAL DEFAULT JUDGMENT**

This matter is before the Court on Plaintiffs' Motion for Final Default Judgment against Defendant Santana Management, LLC ("Defendant"). ECF No. 9.[1] Defendant did not file a response to the Complaint or to the instant motion, and the deadlines to do so have long passed. After careful consideration of Plaintiffs' filings, the record, the relevant authority, and being otherwise fully advised on the matter, the undersigned **RESPECTFULLY RECOMMENDS** that Plaintiffs' Motion for Final Default Judgment, ECF No. 9, be **GRANTED**.

**I.  BACKGROUND[2]**

In July 2022, Defendant submitted a marine insurance application for a 2013 48' Sunseeker with hull identification no. XSK05973A313 (the "Vessel") to Plaintiffs. ECF No. 1 at ¶¶ 10, 17; ECF No. 1-1. In early 2023, Defendant submitted a second insurance application for the same

---

[1] The Honorable Jose E. Martinez, United States District Judge, referred the motion to the undersigned. ECF No. 10.

[2] The following facts are deemed admitted with respect to Defendant by virtue of the default. *See Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987).

1

Vessel.  ECF No. 1 at ¶ 19; ECF No. 1-2.  Defendant's applications listed the Vessel's purchase price as $600,000 and listed Arniel Santana as the only beneficial owner.  ECF No. 1 at ¶¶ 18-19.  Among other questions, the second application asked, "Have you or any operator been convicted of a criminal offense or pleaded no contest to a criminal action?"  ECF No. 1-2 at 1.  Defendant marked "yes" in response to that question and disclosed that Arniel Santana had been convicted of "laudering."  *Id.*; ECF No. 1 at ¶ 20.

In September 2023, Defendant submitted a third insurance application, which listed the Vessel's purchase price as $650,000; listed Ahmet Santana as the only beneficial owner and driver of the Vessel; and denied that the Vessel's operator had been convicted of a felony in the last 10 years.  ECF No. 1 at ¶ 21; ECF No. 1-3.  In response to Plaintiffs' follow-up questions, Defendant reported, through its broker, that Arniel Santana was no longer associated with Defendant or the Vessel, and assured Plaintiffs that Ahmet Santana "ha[d] a clean [criminal] record."  ECF No. 1 at ¶¶ 23-25; ECF Nos. 1-5, 1-6, 1-7.  Defendant's broker also sent Plaintiffs an Amendment for Domestic Limited Liability Company filed with the Secretary of the State of Montana, which indicated that Ahmet Santana and Carolina Fontela were the only members of Defendant.  ECF No. 1 at ¶ 26; ECF No. 1-8.

On September 29, 2023, per Plaintiffs' request, Defendant submitted a final insurance application that added Carolina Fontela as a beneficial owner but listed only Ahmet Santana as a vessel operator.  ECF No. 1 at ¶¶ 27-28; ECF No. 1-9.  Plaintiffs subsequently advised Defendant that the Vessel's hull value would be decreased to $600,000 based on the market valuation in a pre-purchase survey, which Defendant accepted.  ECF No. 1 at ¶ 30.  Plaintiffs subsequently agreed to issue a private pleasure yacht policy of marine insurance to Defendant, bearing policy number CSRYP/228669, effective September 29, 2023, through September 29, 2024 (the "Policy").  *See*

2

*id.* at ¶ 31; *see also* ECF No. 1-10 (Insurance Agreement).  Furthermore, General Condition xiii of the Policy states: "This contract is null and void in the event of non-disclosure or misrepresentation of a fact or circumstances material to Our acceptance or continuance of this insurance.  No action or inaction by Us shall be deemed a waiver of this provision."  ECF No. 1 at ¶ 64; ECF No. 1-10 at 14.

In January 2024, Ahmet Santana allegedly moved the Vessel from Miami to the Bahamas due to the upcoming Miami Boat Show.  ECF No. 1 at ¶ 11.  One month later, Defendant reported to Plaintiffs the alleged theft of the Vessel from Brown's Marina in Bimini, Bahamas.  *Id.* at ¶¶ 12-13.

Thereafter, Plaintiffs began an investigation of the alleged theft and discovered several factual misrepresentations in Defendant's final insurance application.  ECF No. 1 at ¶¶ 32-39.  First, although Defendant listed the Vessel's purchase price as $650,000 in its insurance application, the investigation revealed that the purchase price was $315,000.  ECF No. 1 at ¶¶ 32, 46-47; *see also* ECF No.1-3 at 2; ECF No. 1-9 at 1; ECF Nos. 1-11, 1-12.  Second, Plaintiffs discovered that Arniel Santana, who had been convicted of "conspiracy to utter counterfeit currency," was a member of Defendant and was involved in the ownership of the Vessel, despite Defendant's assertions to the contrary during the application process.  ECF No. 1 at ¶¶ 33-37; *see also* ECF Nos. 1-7, 1-8, 1-13, 1-14, 1-15.  Lastly, Plaintiffs also obtained the criminal record of Carolina Fontela and discovered that she was convicted in 2018, based on her guilty plea, of conspiracy to utter counterfeit currency in the same case in which Arniel Santana was convicted.  ECF No. 1 at ¶¶ 38, 57, 77; ECF No. 1-16.  Defendant had not disclosed Fontela's conviction to Plaintiffs when asked: "Have you or any operator been convicted of a criminal offense or pleaded no contest to a criminal action?"  ECF No. 1 at ¶¶ 56, 76; *see also* ECF No. 1-2 at 1; ECF No. 1-9

at 3.

As a result, on October 10, 2024, Plaintiffs initiated the instant action against Defendant seeking a declaratory judgment that the Policy is void. ECF No. 1. Specifically, Plaintiffs argue that Defendant breached its duty under the doctrine of *uberrimae fidei*, *id.* at ¶¶ 41-62, and General Condition xiii of the Policy, *id.* at ¶¶ 64-82, when it misrepresented those three facts during the application process.

On October 30, 2024, Plaintiffs served Defendant with the Summons and Complaint, but Defendant failed to respond. ECF No. 4. The Court entered an order directing the Clerk to enter default, and the Clerk of Court did so on November 26, 2024. ECF Nos. 5, 6. After the Clerk's entry of default, the Court entered an Order on Final Default Judgment Procedure, giving Defendant until December 12, 2024, to respond to the Complaint and file a motion to set aside the Clerk's default, and directing Plaintiffs to file a motion for final default judgment by December 19, 2024. ECF No. 7. Defendant did not respond to the Complaint or file a motion to set aside the Clerk's default. Plaintiffs, however, filed the instant motion against Defendant. ECF No. 9. As of the date of this Report and Recommendation, Defendant has not responded to the Complaint or the Motion for Final Default Judgment, nor has it otherwise appeared in this case.

## II. LEGAL STANDARD

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a); *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1316 (11th Cir. 2002). The effect of a clerk's default is that all of the plaintiff's well-pled allegations are deemed admitted. *See Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987); *see also Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)

(defaulted defendant deemed to admit well-pled allegations, but "not held to admit facts that are not well-pleaded or to admit conclusions of law").

Only the well-pled allegations are admitted because "entry of default judgment is only warranted when there is a sufficient basis in the pleadings for the judgment entered, with the standard for 'a sufficient basis' for the judgment being akin to that necessary to survive a motion to dismiss for failure to state a claim." *Singleton v. Dean*, 611 F. App'x 671, 671 (11th Cir. 2015) ("The Complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face, which is met when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *Certain Underwriters at Lloyd's London Subscribing to Policy BRT3A000415-02 v. A.M.A. Consulting & Constr. Servs.*, No. 21-cv-20979, 2022 WL 542893, at *5 (S.D. Fla. Feb. 7, 2022), *report and recommendation adopted*, 2022 WL 539183 (S.D. Fla. Feb. 22, 2022). Therefore, before entering a default judgment, a court must ensure that the well-pleaded allegations in the complaint state a substantive cause of action and provide a sufficient basis for the particular relief sought. *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007); *see also, e.g.*, *Luxottica Group S.p.A. v. Individual, P'ship or Unincorporated Ass'n*, No. 17-CV-61471, 2017 WL 6949260, at *2 (S.D. Fla. Oct. 3, 2017) ("Because a defendant is not held to admit facts that are not well pleaded or to admit conclusions of law, the Court must first determine whether there is a sufficient basis in the pleading for judgment to be entered.").

### III. ANALYSIS

Plaintiffs' motion for final default judgment against Defendant seeks declaratory relief that the Policy is void pursuant to the doctrine of *uberrimae fidei* and the Policy's General Condition xiii. The Eleventh Circuit follows the well-settled marine insurance doctrine of *uberrimae fidei*,

or utmost good faith. *HIH Marine Servs., Inc. v. Fraser*, 211 F.3d 1359, 1362 (11th Cir. 2000). "*Uberrimae fidei* requires that an insured fully and voluntarily disclose to the insurer all facts material to a calculation of the insurance risk." *Id.*; *see also Quintero v. Geico Marine Ins. Co.*, 983 F.3d 1264, 1271 (11th Cir. 2020).

"[M]ateriality in the marine insurance context is broadly defined as anything that could influence the insurer's evaluation of the risk presented by the insured." *HIH Marine Servs.*, 211 F.3d at 1363-64. In other words, "[a] misrepresentation is material if 'it might have a bearing on the risk to be assumed by the insurer.'" *Id.* (quoting *Northfield Ins. Co. v. Barlow*, 983 F. Supp. 1376, 1380 (N.D. Fla. 1997)).

"The doctrine of *uberrimae fidei* requires the insured to exercise the 'highest degree of good faith' in entering a marine insurance contract because 'the underwriter often has no practicable means of checking on either the accuracy or the sufficiency of the facts' that the insured furnishes to the insurer before the insurer accepts the risk and sets the policy's conditions and premiums." *Great Lakes Ins. SE v. Chartered Yachts Miami LLC*, 676 F. Supp. 3d 1251, 1259 (S.D. Fla. 2023) (quoting *HIH Marine Servs.*, 211 F.3d at 1362). Thus, "an insured's material misrepresentation to an insurer renders a marine insurance policy void *ab initio*." *Quintero*, 983 F.3d at 1271 (citing *AIG Centennial Ins. Co. v. O'Neill*, 782 F.3d 1296, 1303 (11th Cir. 2015)).

Additionally, General Condition xiii of the Policy provides that the "contract is null and void in the event of non-disclosure or misrepresentation of a fact or circumstances material to Our acceptance or continuance of this insurance. No action or inaction by Us shall be deemed a waiver of this provision." ECF No. 1 at ¶ 64; ECF No. 1-10 at 14. Considering that General Condition xiii "essentially sets forth the same standard for voiding a marine insurance policy as does the *uberrimae fidei* doctrine, other courts in this district have applied the two interchangeably." *Clear*

*Spring Prop. & Cas. Co. v. Astonbluwaves LLC*, No. 22-21854-CIV, 2024 WL 665673, at *4 (S.D. Fla. Jan. 24, 2024) (interpreting a maritime insurance policy with virtually identical language to the contractual provision at issue here), *report and recommendation adopted*, 2024 WL 664136 (S.D. Fla. Feb. 16, 2024).

Thus, for Plaintiffs to prevail on final default judgment, they must establish two elements: (1) Defendant made misrepresentations in its insurance application, and (2) those misrepresentations related to material facts.

Here, Plaintiffs allege that Defendant violated the doctrine of *uberrimae fidei* by misrepresenting three facts during the insurance application process: (1) the Vessel's price; (2) the involvement of Arniel Santana, a convicted felon, in the Vessel's ownership; and (3) Carolina Fontela's criminal history. ECF No. 1 at ¶¶ 46-47, 50-53, 56-58.

As to the Vessel's price, Defendant's final insurance application lists the Vessel's purchase price as $650,000. ECF No. 1-9 at 1. However, during Plaintiffs' investigation of the alleged theft, Defendant submitted to Plaintiffs a Vessel Purchase Agreement and corresponding wire transfer confirmation, both of which established that the actual purchase price of the Vessel was $315,000. ECF No. 1 at ¶ 32; ECF Nos. 1-11, 1-12. Thus, Plaintiffs have demonstrated that Defendant misrepresented the Vessel's purchase price.

Second, as to the misrepresentation regarding Arniel Santana's involvement with the Vessel, Defendant omitted Arniel Santana as a beneficial owner on its application, ECF No. 1-9, and Defendant stated to Plaintiffs, through Defendant's broker, that "the brother who was convicted is not involved with the vessel." ECF No. 1-7. Defendant's broker also submitted corporate documents for Defendant to prove that Arniel Santana was not involved with the Vessel. ECF No. 1-8. However, the version of those documents that Plaintiffs retrieved directly from the

Montana Secretary of State revealed that Defendant submitted altered documents and that Arniel Santana is in fact a member of Santana Management, LLC, and has been a member since its organization.  ECF No. 1-14; *see* ECF No. 1 at ¶¶ 51, 71.  Thus, Plaintiffs have demonstrated that Defendant misrepresented Arniel Santana's involvement with the Vessel.

Third, as to Fontela's criminal record, Defendant denied in its insurance application that any of the Vessel's owners or operators had ever "been convicted of a criminal offense or pleaded no contest to a criminal action."  ECF No. 1-9 at 3.  However, both Arniel Santana and Carolina Fontela were convicted of conspiracy to utter counterfeit currency in 2018.  ECF Nos. 1-15, 1-16.  Thus, Plaintiffs have also demonstrated that Defendant misrepresented the owners' criminal record.

As to materiality, Plaintiffs' well-pled allegations that a "prudent and intelligent underwriter would have considered" each misrepresentation as material in the calculation of the insurance risk is admitted as true given Defendant's default.  ECF No. 1 at ¶¶ 48, 54, 59, 68, 74, 79; *see also*, *e.g.*, *Amguard Ins. Co. v. Super Winn Nail Spa, Inc.*, No. 23-61304, 2024 WL 996444, at *1 (S.D. Fla. Mar. 5, 2024) (citing *Buchanan*, 820 F.2d at 361).  In fact, Plaintiffs allege that they "would not have issued the Policy, would not have issued it at the same premium, or would not have issued it on the same terms and/or conditions, had Insurers known any one or any combination" of the facts described above.  ECF No. 1 at ¶¶ 61, 81.  Thus, the undisputed facts in this case establish that each misrepresentation could have influenced Plaintiffs' decision to issue the Policy, and thereby the misrepresentations are material.

Because Defendant made material misrepresentations in its application for marine insurance, Plaintiffs are entitled to have the Policy declared void *ab initio* pursuant to the doctrine

of *uberrimae fidei*. Accordingly, Plaintiffs have no liability to Defendant under the Policy for the alleged theft of the Vessel.

## IV.     CONCLUSION

Based on the foregoing, the undersigned hereby **RECOMMENDS** that Plaintiffs' Motion for Final Default Judgment against Defendant Santana Management, LLC, ECF No. 9, be **GRANTED**, and that the Court enter final default judgment declaring the Policy void *ab initio*.

Pursuant to Local Magistrate Rule 4(b), the Court finds good cause to EXPEDITE the period to serve and file written objections to this Report and Recommendation. Accordingly, within seven (7) days from the date of this Report and Recommendation, that is, by September 10, 2025, the parties shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Jose E. Martinez, United States District Judge. Failing to file timely objections will bar a *de novo* determination by the District Judge of any issue addressed in the Report and Recommendation, will constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions," and will only allow appellate review of the district court order "for plain error if necessary in the interests of justice." 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 146-47 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); *see also Harrigan v. Metro Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**RESPECTFULLY RECOMMENDED** in Chambers in Miami, Florida, this 3rd day of September 2025.

```
                                        _____
                                        EDUARDO I. SANCHEZ
                                        UNITED STATES MAGISTRATE JUDGE
```

cc:     Hon. Jose E. Martinez
        Counsel of Record